UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHELLE FIGUEROA,

                              Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                               06-CV-6277 (RRM)(RML)

   - against -

THE CITY OF NEW YORK; DOMINICK
VALENTI, Lieutenant, Medical Division; and
CHARLES GARGUILO, Sergeant, Medical
Division; each being sued individually and in their
official capacities as employees of the Police
Department of the City of New York,

                              Defendants.
------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

      Plaintiff Michelle Figueroa ("Figueroa"), a former police officer, brought this civil rights action against the City of New York ("City") and a number of police officers in the New York City Police Department ("NYPD") (collectively, "defendants"), alleging numerous violations of federal and state law. At this stage of the proceedings, Figueroa's sole remaining claims relate to her termination from the NYPD based on alleged disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107, *et seq*. Presently before the Court is defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. No. 56.) For the reasons stated below, defendants' motion is granted and the complaint is dismissed.

## WITHDRAWAL OF CLAIMS

      Figueroa's lawsuit was originally consolidated with a number of other complaints by current and former police officers that sound primarily in disability discrimination. Those cases

all involve officers who engaged in alcohol-related misconduct and whom the NYPD's Counseling Services Unit ("CSU")[1] required to undergo alcohol abuse treatment. The plaintiffs claim that the NYPD falsely perceived them as suffering from the disability of alcoholism and discriminated against them on that basis. *See MacShane v. City of New York et al.*, No. 05-CV-6021 (and eleven member cases).[2]

In her amended complaint, which is the operative pleading, Figueroa alleges nearly thirty causes of action against thirteen defendants – including, like the *MacShane* plaintiffs, that the NYPD discriminated against her on the basis of her perceived alcoholism by forcing her to obtain alcohol abuse treatment. (*See* Am. Compl. (Doc. No. 3).) However, Figueroa has since withdrawn most of her claims. First, in a stipulation so-ordered by the undersigned on December 8, 2008, Figueroa agreed to withdraw all of her claims *except* (1) those against the City alleging disability discrimination under the ADA, the NYSHRL, and the NYCHRL, and (2) those for race and gender discrimination under Title VII, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL. Those remaining claims were left intact "only insofar as they concerned the termination of her probationary employment with the NYPD," and Figueroa expressly agreed that her remaining causes of action "no longer concern[ed] counseling and/or treatment at the NYPD's counseling unit." Consequently, following the completion of discovery, Figueroa's lawsuit was de-consolidated from *MacShane* and its member cases for the purpose of dispositive motion practice. (*See* So-Ordered Stipulation (Doc. No. 36).)

---

[1] The CSU is a unit of the NYPD with the primary function of assisting police officers who are experiencing difficulties with, among other issues, alcohol abuse.

[2] Figueroa's attorney, Jeffrey L. Goldberg, also represents MacShane and the other plaintiffs in that consolidated action. Contemporaneously with the issuance of this decision, the Court is issuing a separate opinion granting defendants' motion for summary judgment against MacShane and all other consolidated plaintiffs.

Furthermore, in her written opposition to defendants' motion for summary judgment, Figueroa has expressly withdrawn her race and gender discrimination claims. (*See* Pl.'s Opp. (Doc. No. 63) at 5, 10 (ECF pagination).) The Court thus dismisses those additional causes of action. *See* Fed. R. Civ. P. 41(a)(2). Accordingly, Figueroa's sole remaining claim is for disability discrimination pertaining to her termination from the NYPD, but *unrelated* to her counseling and/or treatment for alcoholism by the CSU.

## BACKGROUND[3]

Figueroa began working for the NYPD as a police officer in 1992. In March 2004, she was arrested and prosecuted for assaulting her domestic partner, and eventually pled guilty to harassment. The NYPD suspended Figueroa for three weeks, placed her on restricted duty for one year, and ordered that she report to the CSU for evaluation. The CSU determined that Figueroa suffered from alcohol abuse problems. Figueroa, in turn, agreed to attend an inpatient treatment program, followed by Alcoholics Anonymous meetings and counseling sessions.

The NYPD also brought departmental disciplinary charges against Figueroa as a consequence of her March 2004 arrest and conviction. To resolve those departmental charges, Figueroa agreed to a negotiated settlement in which she pled guilty, forfeited all pay and benefits while suspended, and agreed to be placed on dismissal probation for one year. After the Police Commissioner approved the settlement, the probationary period commenced on January 4, 2005.

As part of the probation, Figueroa was subject to monitoring by the NYPD for her compliance with departmental regulations, including the NYPD's sick-leave policy. Under that policy, an officer may call out sick for two consecutive days, but must "[r]emain at [her]

---

[3] The following material facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with defendants' motion for summary judgment and Figueroa's opposition thereto. The Court considered as undisputed the factual assertions in the parties' Rule 56.1 statements that were admitted or deemed admitted because they were not contradicted by citations to admissible evidence in the record. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

residence or other authorized location unless permission to leave is granted by [a] surgeon or Sick Desk supervisor," and the officer must "[a]dvise [the] Sick Desk and district surgeon of any change of address/location or telephone number."

While on probation on August 23, 2005, Figueroa, who has asthma, called in sick; Figueroa claimed that she was suffering from asthma-related symptoms. The next day, August 24th, Figueroa called in sick again. Because she was on probation as well as subject to supervisory visits while on sick leave, defendant Charles Garguilo ("Garguilo"), a sergeant in the NYPD's Absence Control Unit, visited 247 Toad Pasture Road in Middletown, New York – Figueroa's primary residence according to the NYPD's records – to verify that she was sick and actually at home.[4]

Although Garguilo went to the residence at approximately 10:00 a.m., he was unable to locate Figueroa. He knocked on her front door several times, but got no answer. He also checked with his command to determine whether Figueroa had received permission to leave her house, but she had not. Garguilo then called the phone number that the NYPD had on file for Figueroa, but received no answer. Next, he phoned some of Figueroa's emergency contacts and eventually reached Figueroa's mother; she was unsure about her daughter's whereabouts, suggesting that Figueroa might be Pennsylvania. Finally, Garguilo went to Figueroa's previous address in New Windsor, New York, but did not find her there. Over one hour later, Figueroa called Garguilo on his cellphone, claimed that she had been at her Toad Pasture Road residence all along, and stated that the sergeant must have gone to the wrong address.

On September 6, 2005, a departmental hearing was held to address Figueroa's sick-leave incident. Figueroa admitted that, when she called in sick each day on August 23–24, she was

---

[4] Garguilo worked under the supervision of Lieutenant Dominick Valenti, who is the second individual defendant in this lawsuit.

physically located at a different house in Pine Bush, New York. Figueroa acknowledged having told the NYPD that she would be at her primary address while on sick leave, and claimed that she had eventually returned to that address each day. Figueroa maintained that, when Officer Garguilo attempted to visit her on August 24th, she was present and sleeping in the basement of the house.

Concluding that Figueroa's earlier claim that she had been home all day on August 24th was contradicted by her statements during the hearing, and that Figueroa had committed misconduct by leaving her residence in violation of the NYPD's sick-leave policy, the NYPD instituted formal charges against Figueroa. The NYPD eventually terminated her employment in January 2006. This action followed.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed," and the Court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd.*

5

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).

In other words, the nonmovant must demonstrate more than just "metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, by offering "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (quotations omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

## DISCUSSION

Disability discrimination claims under the ADA are reviewed under the familiar three-part burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Sykes v. North Fork Bank*, No. 07-CV-1102 (FB), 2009 WL 5042531, at *1 (E.D.N.Y. Dec. 16, 2009) (citing *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999)). First, a plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Sykes*, 2009 WL 5042531, at *1. If the plaintiff succeeds, the burden then falls upon the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The defendant satisfies this burden if the reason given, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *see Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 469 (2d Cir. 2001). At that point, the plaintiff must put forth evidence suggesting that the reasons offered are mere pretext designed to cover up the employer's actual discriminatory intent. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)); *McPhatter v. New York City*, 378 F. App'x 70, 72 (2d Cir. 2010).

To carry her burden under the last prong of the *McDonnell Douglas* framework, a plaintiff need not show that her employer's reasons are false or that they played no role in the decision; rather, she must show that the proffered reasons were not the only reasons, and that discriminatory animus was at least one of the motivating factors behind the adverse employment action. *See Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 203 (2d Cir. 1995). "The pretext inquiry thus normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules, whether the rule applied to the plaintiff has been applied uniformly, and whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d Cir. 1993); *Pacenza v. Int'l Bus. Machs. Corp.*, No. 04-CV-5831 (PGG), 2009 WL 890060, at *12 (S.D.N.Y. Apr. 2, 2009). The ultimate burden of persuading the fact finder that the employer intentionally discriminated rests with the plaintiff at all times. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

Here, Figueroa has withdrawn all of her claims except those sounding in disability discrimination. And even on that score, she has withdrawn any challenge pertaining to the CSU, which necessarily includes the propriety of her diagnosis regarding alcohol abuse and the

7

NYPD's requirement that she complete an alcohol treatment program.[5]  The only remaining cause of action is a narrow one: her claim for disability discrimination relating to the NYPD's termination of her probationary employment.  Figueroa's theory is that, after the NYPD diagnosed her with a drinking problem and mandated that she attend inpatient rehabilitation, the NYPD labeled her an "alcoholic" in her employment file.  She insists that defendants Garguilo and Valenti had full access to that file, and that their "perception of [a] disability was clearly held against" her insofar as defendants "disingenuously attempt[ed] to proffer a fabricated baseless reason for terminating her employment" – *i.e.*, violation of the NYPD's sick-leave policy.  (*See* Pl.'s Opp. (Doc. No. 63) at 13 (ECF pagination).)  However, Figueroa's claim does not withstand scrutiny.  Even assuming, for the sake of argument, that Figueroa could establish a *prima facie* case of disability discrimination, her cause of action clearly fails under the burden-shifting framework.

To begin, defendants have met their burden of establishing a viable, non-discriminatory basis for terminating Figueroa's employment.  As set forth above, the NYPD suspended Figueroa in 2004 after her arrest and criminal conviction for harassment.  To resolve the departmental disciplinary charges against her (and to allow Figueroa to keep her job), she agreed to plead guilty to those internal charges and to serve one year of probation.  While on probation, Figueroa called out sick two days in a row.  On the second day, Sergeant Garguilo visited Figueroa's home to ensure that she was physically there, as required by departmental policy.  Garguilo could not locate Figueroa, who subsequently made conflicting statements about whether she had actually been at home all day.  The NYPD concluded that Figueroa had violated its long-standing sick-leave policy – which constituted a legitimate, non-discriminatory reason

---

[5] Inasmuch as portions of Figueroa's written opposition nonetheless appear to urge that she was subjected to disability-based discrimination by merely being required to undergo alcohol abuse treatment, the Court declines to consider that specifically-withdrawn argument.

for terminating her employment. *See Pacenza*, 2009 WL 890060, at *13 (citing cases and noting that "[c]ourts have held that violation of an employer's policies is a legitimate reason for an employee's termination").

The burden thus shifts back to Figueroa to demonstrate that defendants' proffered reason was pretextual, and that discrimination was at least one motivating factor for her termination. Figueroa falls well short of meeting this burden. The thrust of her argument is that defendants "cannot factually establish that she was out of [her] residence" on August 24, 2005, that her violation of departmental policy was "fabricated," and that, in essence, the Court can infer discriminatory intent from the fact that – according to Figueroa, at least – she was at home on the day in question. (*See* Pl.'s Opp. (Doc. No. 63) at 34 (ECF pagination).) But whether Figueroa was actually at home is largely beside the point. What matters is defendants' *motivation* for terminating her. In a discrimination case, after all, the Court is "decidedly not interested in the truth of the allegations against plaintiff," but rather "interested in what *motivated* the employer; the factual validity of the underlying imputation against the employee is not at issue." *McPherson*, 457 F.3d at 216 (quotations and citations omitted) (emphasis in original). That is because "[w]here a plaintiff has been terminated for misconduct, the question is not whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination." *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) (quotations omitted); *see Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 187–88 (E.D.N.Y. 2008) ("[T]he fact that an employee disagrees with the results of an employer's decision regarding termination, or even has evidence that the decision was objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext for termination.");

9

*Argueta v. North Shore Long Island Health Sys., Inc*., No. 01-CV-4031 (JG), 2003 WL 22670915, at *5 (E.D.N.Y. Nov. 6, 2003) (where employer's alleged reason for firing the plaintiff was that she had struck a co-worker, the "relevant inquiry [wa]s not what happened [– *i.e.*, whether the employee "actually struck her coworker" –] but rather, what the *decisionmakers believed* happened") (emphasis in original).

The uncontroverted record evidence demonstrates that, after an investigation, the NYPD had a reasonable, good faith belief that Figueroa had violated its sick-leave policy, and that the NYPD terminated her for that reason. Aside from wholly unsupported and conclusory statements, Figueroa has provided absolutely no evidence that the reason for her firing was pretextual, or that discrimination on the basis of any alleged perceived disability played a role. While Figueroa insists that the NYPD labeled her an "alcoholic" in her employment file, and that defendants Garguilo and Valenti had access to that file, she fails to cite any supporting evidence in the record. Nor has Figueroa identified any proof that she was treated differently from similarly-situated officers, or that defendants ever made statements even remotely suggesting that discriminatory animus was at play. Indeed, based on this record, the Court cannot discern any connection whatsoever between Figueroa's diagnosis by the CSU and her termination nearly two years later.

In the end, Figueroa is required to "do more than simply show that there is some metaphysical doubt as to the material facts" by coming "forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586–87. By failing to point to any evidence tending to show that defendants' proffered non-discriminatory reason for her termination was pretextual, she has not satisfied that burden. Accordingly, defendants are entitled to summary judgment on Figueroa's ADA claim. *See Kolesnikow*, 622 F. Supp. 2d at

114 ("Where an employee's *prima facie* case and showing of pretext are as weak as they are here, and where, as here, there is strong evidence weighing against an inference of discriminatory intent, summary judgment for the employer is appropriate."); *Graham v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 451 F. Supp. 2d 360, 371 (D. Conn. 2006) (finding that plaintiff bringing "regarded as" ADA claim failed to show pretext where "all evidence suggests that [the plaintiff] was terminated for precisely the reasons stated by [the defendant]" and there was no evidence beyond the plaintiff's "rank speculation" to suggest otherwise).

Because claims under the NYSHRL and NYCHRL are also subject to *McDonnell Douglas* burden shifting, *see, e.g.*, *Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 357–58 (S.D.N.Y. 2012), and because, as described above, defendants have offered a legitimate, non-discriminatory reason for their actions that Figueroa has failed to rebut, defendants are likewise entitled to summary judgment on Figueroa's NYSHRL and NYCHRL disability discrimination claims.[6] *See Doe v. Major Model Mgmt. Inc.*, No. 11-CV-6182 (KBF), 2012 WL 763556, at *10 (S.D.N.Y. Mar. 9, 2012) (citing *Fall v. N.Y. St. United Teachers*, 289 F. App'x 419, 422 (2d Cir. 2008) and *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 n.2 (2d Cir. 2006)); *see also Melie v. EVCI/TCI College Admin.*, 374 F. App'x 150, 154 (2d Cir. 2010) (noting that the plaintiff's failure to present genuine issue of fact regarding pretext doomed both federal and NYCHRL claim); *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 291–92 (S.D.N.Y. 2010) (granting summary judgment on NYSHRL and NYCHRL discrimination claims because the plaintiff failed to show pretext).

---

[6] The Court recognizes the more liberal construction given to NYCHRL claims. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *Ugactz v. United Parcel Service, Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013) (noting that the definition of a disability is broader under the NYCHRL than under the ADA). Yet that detail is irrelevant here in light of Figueroa's failure to demonstrate pretext.

11

**CONCLUSION**

For the foregoing reasons, the Court finds that defendants are entitled to summary judgment on Figueroa's remaining claims. Accordingly, defendants' motion for summary judgment, (Doc. No. 56), is hereby granted and those claims are dismissed. The Clerk of Court is directed to enter Judgment accordingly, and to close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       March 23, 2015  _____
ROSLYNN R. MAUSKOPF
United States District Judge